```
 1                    UNITED STATES DISTRICT COURT

 2                   CENTRAL DISTRICT OF CALIFORNIA

 3                                 ---

 4

 5   THE HONORABLE STEPHEN V. WILSON, U.S. DISTRICT JUDGE PRESIDING

 6

 7   VENTURA CONTENT, INC., LIMITED,)
                                    )
 8            Plaintiff,            )
                                    )
 9      vs.                         )       No. CV 11-5912-SVW
                                    )
10                                  )
     MOTHERLESS INC., etc., et al., )
11                                  )
              Defendants.           )
12   _____)

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    LOS ANGELES, CALIFORNIA

17                   MONDAY, OCTOBER 29, 2012

18

19

20

21

22   _____

23              DEBORAH K. GACKLE, CSR, RPR
                   United States Courthouse
24            312 North Spring Street, Room 402A
                Los Angeles, California 90012
25                    (213) 620-1149
```

**APPEARANCES OF COUNSEL:**

**For the Plaintiff:**

    Christopher W Arledge
    Peter R Afrasiabi
    One LLP
    West Tower
    4000 MacArthur Boulevard Suite 1100
    Newport Beach, CA 92660
    949-502-2870
    Fax: 949-258-5081
    Email: pafrasiabi@onellp.com

**For the Defendant:**

    David S Richman
    Theodora Oringher Miller & Richman PC
    10880 Wilshire Boulevard Suite 1700
    Los Angeles, CA 90024-4101
    310-557-2009
    Fax: 310-551-0283
    Email: drichman@tocounsel.com

                    - - - - -

```
 1    LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 29, 2012; 2:00 P.M.
 2                             - - - - -
 3
 4              THE CLERK:  Item 8, CV 11-5912-SVW, Ventura Content,
 5    Limited versus Motherless, Incorporated, et al.
 6              Counsel, please state your appearances.
 7              MR. ARLEDGE:  Good afternoon, Your Honor.  Chris
 8    Arledge for the plaintiff.
 9              MR. AFRASIABI:  Good afternoon, Your Honor.  Peter
10    Afrasiabi on behalf of the plaintiff.
11              MR. RICHMAN:  Good afternoon, Your Honor.  David
12    Richman for defendants.
13              THE COURT:  Okay.  You may be seated.
14              It seems that with regard to the copyright claims --
15    and those are the claims that I want to address at the
16    outset -- that much of the -- strike that -- many of the facts
17    are undisputed.  It seems to the court that YouTube -- well, is
18    Motherless YouTube or is it just like YouTube?  Sort of like a
19    YouTube type of --
20              MR. RICHMAN:  Very similar, but not identical.
21              THE COURT:  Yeah.  So Motherless is not disputing
22    that the films that Ventura Content, or plaintiff, made found
23    its way to its site, it's not contesting that Ventura Content
24    has a copyright in those films, its contention is that as a
25    matter of law, it's not responsible initially for what was
```

1  uploaded onto its site and that it only has a legal duty to
2  cleanse its site of protected works when it has knowledge that
3  there are works on its sites that are protected.  And in this
4  case, that's what it did when it had noticed that the works
5  were protected:  It removed the works.
6           Is that a fair summary of your position?
7           MR. RICHMAN:  It is a fair summary, as far as you go.
8  We have other contentions, but everything that you said seems
9  to me to be accurate.
10          THE COURT:  So if the -- just for maybe -- hopefully
11 not overly simplifying things, but when the case goes to trial,
12 it seems to me on the copyright claims, the principal matter
13 for the fact finder will be whether and when Motherless had
14 knowledge and -- because that seems to be the only legal -- the
15 only factual issue.  I think that's it, isn't it?
16          Let me ask the plaintiff.
17          What do you contend is the fact issue that the jury
18 has to decide?
19          MR. ARLEDGE:  There are a handful of facts under the
20 DMCA Safe Harbor that the jury has to decide.  One of those
21 facts --
22          THE COURT:  Safe Harbor under the copyright law?
23          MR. ARLEDGE:  Yeah, under the Digital Millennium
24 Copyright Act.  I think it's 512(c).  Essentially in this case
25 nobody disputes that my client owned the works, nobody disputes

```
 1   that those works were uploaded and then shown to the world and
 2   made available for download without permission; that much is
 3   conceded.  The question is whether or not defendants are
 4   responsible.  Primely, that hinges on whether or not they're
 5   entitled to DMCA Safe Harbor protection.  There are a number of
 6   issues that the jury will have to decide in order to determine
 7   that.
 8              THE COURT:  What's the principal issue?
 9              MR. ARLEDGE:  The principal issue is the extent to
10   which defendants exercised control over and managed the content
11   that appears on the site.  We don't actually agree that
12   motherless.com is all that similar to YouTube.  They're similar
13   in the sense that people are allowed to, maybe even encouraged
14   to, upload content to the site.  To that extent, they're
15   similar.  The difference is that motherless.com plays a pretty
16   substantial role in both encouraging people to upload
17   particular types of material, in uploading material themselves,
18   and in addition to -- in addition to that, in -- essentially,
19   making the site easy for mass infringement.  That's a big
20   picture.
21              Specifically, what does that mean?  That means they
22   do things, like allow you to upload thousands of files or -- of
23   clips or videos at one time.  They do not enforce consistently
24   the repeat infringer policy that they claim to enforce --
25              THE COURT:  What is the -- when you talk about these
```

1   Safe Harbor provisions, you're saying that -- but your claim
2   was brought under the Copyright Act, wasn't it?
3           MR. ARLEDGE: Absolutely. If it were not for an
4   affirmative defense that defendants allege regarding the DMCA
5   Safe Harbor, I don't think there would be much to talk about at
6   trial.
7           THE COURT: So what -- how does one get to achieve
8   the Safe Harbor?
9           MR. ARLEDGE: The first thing you have to do is show
10  that you are entitled, that you have satisfied the
11  prerequisites that would entitle you to argue one of these
12  specific Safe Harbors: First of all, you have to meet a
13  particular threshold. One of the threshold questions is do you
14  have and in force a reasonable repeat infringer policy, the
15  idea being that --
16          THE COURT: All right. I understand that. Your
17  position is that the defendant doesn't.
18          MR. ARLEDGE: That's absolutely right.
19          THE COURT: So if the jury finds that to be so, does
20  that disentitle the defendant to the Safe Harbor reduction?
21          MR. ARLEDGE: It absolutely does.
22          THE COURT: In other words, you have to hit all the
23  buttons to get Safe Harbor protection.
24          MR. ARLEDGE: That's exactly right --
25          THE COURT: What is the second one?

```
 1              MR. ARLEDGE:  The second issue has to do with -- let
 2   me grab it -- the second issue -- in this case, because they
 3   chosen -- because they've chosen to make a claim under section
 4   C -- do you have the list, Peter?
 5              Okay.  They have to show that they are, in fact, a
 6   service provider.  That is one of the key terms under 512 --
 7              THE COURT:  What does that mean, "service provider"?
 8              MR. ARLEDGE:  Essentially, a service provider is
 9   somebody who makes access to the web or use of the --
10              THE COURT:  They are a service provider --
11              MR. ARLEDGE:  Yeah, I think they are.  They're more
12   than just a service provider.
13              THE COURT:  But they satisfy that requirement.
14              So what's the third element?
15              MR. ARLEDGE:  They have to accommodate and not
16   interfere with standard technical measures used by copyright
17   owners to identify or protect copyrighted works.
18              THE COURT:  What does that mean?
19              MR. ARLEDGE:  Essentially, it means that you do the
20   things technically that allow copyright owners to identify and
21   avoid infringement on the site.  So, if there's --
22              THE COURT:  Let me ask you this:  Does that mean that
23   a copyright owner such as plaintiff, Ventura, should be able to
24   access Motherless to see if their films are on that site?
25              MR. ARLEDGE:  I don't know that -- that Motherless
```

1 would be required to do that --

2 THE COURT: So what does "accommodate" I mean?

3 MR. ARLEDGE: In this case, what accommodate means is

4 that you do the things technically that are available in the

5 industry that make it easier to avoid infringement. I'll give

6 you an example in our case.

7 There's an issue about whether or not the uploaders

8 have appropriate 2257 records. Now, on motherless.com's

9 website, in their terms of use, what they say is that 22 --

10 that any materials uploaded have to be 2257 compliant.

11 THE COURT: 2257 is what?

12 MR. ARLEDGE: 2257 is a federal recordkeeping statute

13 that has to do with adult content. Essentially what it says

14 is -- there are two different prongs: If you are a producer of

15 adult content, then you have to --

16 THE COURT: One thing I want to separate: In your

17 state 172000 claim, don't you have an injunctive action?

18 MR. ARLEDGE: Yes.

19 THE COURT: And the law that you're saying was

20 violated in connection with that, isn't that the Federal

21 Recordkeeping Act that you're talking about now?

22 MR. ARLEDGE: That is absolutely right.

23 THE COURT: That's what I didn't want you to talk

24 about.

25 MR. ARLEDGE: Well, I have to talk --

```
 1              THE COURT:  No, you don't.  I don't want you to talk
 2   about that provision now.  I want to know what the -- you're
 3   saying that the defendant violated the copyrights in your film,
 4   and the defendant is saying that under these circumstances,
 5   just because I have a site that allows people to upload, then I
 6   am not a copyright infringer.
 7              Isn't that your position?
 8              MR. RICHMAN:  Partially, Your Honor.
 9              THE COURT:  Well, what makes it whole?
10              MR. RICHMAN:  I view this case as having two halves.
11   I don't want to skip over the fact that they have to prove
12   their claims before we get into our affirmative defense, and so
13   part of our defense in this case is that we deny that we are a
14   direct infringer of these films.
15              THE COURT:  But isn't that a matter of law?  I mean,
16   what is the fact?  If the mechanics are that content can be
17   uploaded to your site without your knowledge and that is
18   essentially the YouTube model, isn't it your position that as a
19   matter of law, if you do nothing more, you're not an infringer?
20              MR. RICHMAN:  Yes.
21              THE COURT:  So, I mean, isn't that just a legal
22   position?  What's in dispute?  Isn't that what happens?
23              MR. RICHMAN:  There's nothing in dispute from my
24   point of view, but I can't speak for plaintiff.
25              THE COURT:  But you say you don't want to make a
```

1  prima facie case for the plaintiff, but you go a long way to
2  that by agreeing that they have a copyright, that the matter is
3  copyrightable, and that it found its way to your site in the
4  way that I just described.
5          MR. RICHMAN:  We are not contesting that.
6          THE COURT:  So if that's the fact, then isn't it just
7  a question of law as to whether or not you're a contributing
8  infringer or inducer or whatever, and what is there for the
9  fact finder?  Let me turn once again to the plaintiff.
10         What would the fact finder have to decide beyond what
11 I just outlined?
12         MR. ARLEDGE:  In order to establish infringement, I
13 don't think anything.  Under the facts that both parties agree
14 to --
15         THE COURT:  Why wouldn't the question, then, just be
16 a legal question:  Whether under those facts, that constitutes
17 infringement?
18         MR. ARLEDGE:  Your Honor, I don't have a problem with
19 that.  Under the facts that the parties agreed to, Motherless
20 is an infringer, and the question is whether they're entitled
21 to Safe Harbor protection.
22         THE COURT:  I don't think Motherless takes that view.
23 Motherless agrees that you have a copyright and that the
24 copyrighted work found its way to their site, but they're
25 saying that under the circumstances, the way the material was

1  uploaded, under the law, Motherless had no duty to filter what
2  was put on its site and -- let me ask one more question.  I'll
3  get back to you.
4          Mr. Richman, you would agree, though, that even if
5  you argue that there's no violation of law for the copyrighted
6  works to find their way to your site by way of the upholding,
7  but that if Motherless discovered that they were -- they have
8  on their site a protected work, they had a duty to strip it
9  from their site.
10         MR. RICHMAN:  Yes.
11         THE COURT:  Yes.  So then -- and as I understand it,
12 you did strip these movies from your site.
13         MR. RICHMAN:  Yes.
14         THE COURT:  And you did that after you were informed
15 by the plaintiff that their copyrighted works were on your
16 site, and you took action.
17         MR. RICHMAN:  We did that after being sued.  They
18 never sent us a take-down notice.
19         THE COURT:  I see.  So upon being sued, that's when
20 you had first notice that the copyrighted works were on your
21 site.
22         MR. RICHMAN:  Yes.  We were sued in July of 2011.  We
23 asked for the URLs to the infringing material from plaintiff
24 because that's what would typically be provided in a take-down
25 notice.  We received that information by letter on November 23

```
 1   of 2011, and that same day we deleted the films.
 2            THE COURT:  Let me ask Mr. Arledge:  In terms of
 3   notice, at least from the plaintiff to the defendant, is that
 4   accurate?
 5            MR. ARLEDGE:  In terms of the facts that Mr. Richman
 6   has articulated?
 7            THE COURT:  Yes.
 8            MR. ARLEDGE:  I think those facts are accurate.
 9            THE COURT:  I see.  So -- well, the case is set for
10   trial when?  Next week?
11            MR. ARLEDGE:  Next week, Your Honor.
12            THE COURT:  Yeah.  Let's take a short recess.
13                        (Recess)
14            THE COURT:  Let me get back to the question of
15   knowledge.
16            Is the plaintiff intending to show that the defendant
17   had knowledge of these infringing works prior to the lawsuit?
18            MR. ARLEDGE:  What we know is --
19            THE COURT:  You know, that called for a "yes" or
20   "no".
21            MR. ARLEDGE:  The answer is I don't know.
22            THE COURT:  Well, if you don't know, then you must
23   not have any evidence.
24            MR. ARLEDGE:  No, I was going to tell you what the
25   evidence was --
```

```
 1            THE COURT:  Why can't you answer a question "yes" or
 2   "no"?  That was a plain question.  Do you intend -- I'm not
 3   putting words in your mouth -- do you intend to show at trial
 4   that the defendant had knowledge of these infringing works
 5   prior to the lawsuit?
 6            MR. ARLEDGE:  He saw the material and approved --
 7            THE COURT:  You still refuse to answer my question.
 8   What is the answer?
 9            MR. ARLEDGE:  The answer is yes, he saw and approved
10   it.
11            THE COURT:  The answer is yes.  And then how do you
12   intend to show the knowledge prior to -- prior to the lawsuit?
13            MR. ARLEDGE:  Mr. Lang said at deposition that he
14   reviews and approves all uploads to the website.  They don't go
15   live until he's looked at it and said okay.
16            THE COURT:  That is your answer.
17            And Mr. Lang is the principal.
18            MR. ARLEDGE:  That's correct.
19            THE COURT:  And so you're saying because he approves
20   all the content on the website, then he impliedly knew that
21   what he was approving was copyrighted.
22            MR. ARLEDGE:  What I -- well, I don't know what you
23   mean by "impliedly."
24            THE COURT:  In other words, did you say to him in the
25   deposition, Before something gets on the Motherless website, do
```

```
 1   you approve it?  I think your answer was he said yes.  And so
 2   if he said -- Lang said that he approved something, then,
 3   arguably, he approved these movies.
 4              MR. ARLEDGE:  Yes.
 5              THE COURT:  And then if he approved these movies,
 6   then your argument is that, circumstantial evidence, that he
 7   knew these movies were copyrighted.
 8              MR. ARLEDGE:  Yes.
 9              THE COURT:  All right.  Let me hear the response, if
10   there is one.
11              MR. RICHMAN:  The response is that Mr. Lang did
12   review thumbnails, five thumbnails, of each film -- I shouldn't
13   say that.  Mr. Lang testified that it was his custom and
14   practice to review films that are uploaded to the site.  There
15   are 30,000 films uploaded per day.  So this review is a very,
16   very cursory review.  It's not where you view every film in its
17   entirety or that you spend any significant amount of time doing
18   it.  They have a software program that takes five slices of a
19   video at the 20, 40, 60, 80 and 100 percent intervals, and
20   those five slices are shown on a screen, and so that's all he
21   sees of a video, whether the video is ten minutes long, 90
22   seconds long, or five hours long.  So that's the extent of his
23   review.  It's not --
24              THE COURT:  What did he say he was reviewing the
25   content for?
```

```
 1            MR. RICHMAN:  For anything that would tell him that
 2   it should not be uploaded onto the site.
 3            THE COURT:  What would that be?
 4            MR. RICHMAN:  That could be copyright infringement;
 5   it could be something that was child pornography; it could be
 6   something else.
 7            THE COURT:  But how would he know from these
 8   slices -- as you described them -- whether something was
 9   copyrighted or not?
10            MR. RICHMAN:  That's exactly the point that I want to
11   make.  These 33 videos of the 19 films have no identification
12   on them.  There's no copyright notice; there's no trademark;
13   there's no title; there's no credits; there's no watermark at
14   the bottom --
15            THE COURT:  Is that undisputed?  Is that undisputed?
16            MR. ARLEDGE:  It's not a disputed -- it is largely
17   true.  With regard to one of the films, there is undoubtedly a
18   title.  We don't believe there are watermarks on any of them.
19            THE COURT:  "Watermarks" meaning copyright notices.
20            MR. ARLEDGE:  More likely a trademark from the
21   company that --
22            THE COURT:  So were there any copyright notices on
23   any of these films?
24            MR. ARLEDGE:  A --
25            THE COURT:  "Yes" Or "No"?
```

1     MR. ARLEDGE: The answer is with regard to --
2     THE COURT: The answer is "yes" or "no".
3     MR. ARLEDGE: With regard to one --
4     THE COURT: "Yes" or "no"?
5     MR. ARLEDGE: Yes, with regard to one.
6     THE COURT: What film was that?
7     MR. ARLEDGE: It was the one starring a famous porn
8  star Lexi Belle, and I can't remember the name --
9     THE COURT: Do you agree that there was one film that
10 had a copyright notice?
11    MR. RICHMAN: No, my understanding is that there were
12 none, but a watermark different than a copyright notice.
13    THE COURT: So in other words, when you say
14 "understanding" -- I want the parties to review the films.
15 You're ordered to review the films tomorrow, and I want a
16 submission or stipulation from the parties as to what the --
17 whether the films contain a copyright notice, a title, and what
18 does a watermark mean?
19    MR. RICHMAN: Watermark is if you just took a single
20 snapshot of a video, put it up on the screen, typically what
21 you would see on usually the bottom right-hand corner the video
22 is the name of the producer. So it would say "Hustler" or
23 "Playboy" or "Ventura Content." It's like what you -- when
24 you're watching TV, Your Honor, and you're watching Turner
25 Classic Movies, and at the bottom right it says "Turner Classic

```
 1   Movies" or "AMC" or "FX" --
 2              THE COURT:  That's not a copyright.
 3              MR. RICHMAN:  No.
 4              THE COURT:  That's just an identifying mark with the
 5   producer.
 6              MR. RICHMAN:  In the business it's called a
 7   "watermark."
 8              THE COURT:  And you're saying that only one of the 33
 9   videos has that.
10              MR. RICHMAN:  None.
11              THE COURT:  None.  Well, then, by Thursday, I want a
12   response.
13              Matter will stand submitted.  Thank you.
14                 (Proceedings concluded at 2:30 p.m.)
15                            - - - - -
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3           I hereby certify that pursuant to Section 753,
 4   Title 18, United States Code, the foregoing is a true and
 5   correct transcript of the stenographically reported proceedings
 6   held in the above-entitled matter and that the transcript page
 7   format is in conformance with the regulations of the Judicial
 8   Conference of the United States.
 9
10     Date:  April 22, 2014
11
12                      /S/_____
13                         Deborah K. Gackle
                              CSR No. 7106
14
15
...
25
```